UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID PATRICK DITTO,<br><br>        Petitioner,<br><br>v.<br><br>JEFFREY MACOMBER,<br><br>        Respondent.[1] | Case No.:  15cv2756 JAH (PCL)<br><br>**ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY** |

## INTRODUCTION

Pending before the Court is Petitioner David Ditto's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Respondent filed an answer and Petitioner filed a traverse.  Pursuant to 28 U.S.C. § 636(b)(1), the Honorable Peter C. Lewis, United States Magistrate Judge, submitted a Report and Recommendation ("Report") to this Court recommending that this Court deny the petition.  Petitioner filed objections to the Report.  Respondent did not file objections or a reply to Petitioner's objections.  After careful

---

[1] Jeffrey Beard is no longer the Secretary of the California Department of Corrections and Rehabilitation; Jeffrey Macomber has recently been appointed Secretary of that agency. The Court therefore substitutes "Jeffrey Macomber" as Respondent in place of "Jeffrey Beard." *See* Fed. R. Civ. P. 25(d).

1

consideration of the pleadings and relevant exhibits submitted by the parties, and for the reasons set forth below, this Court **OVERRULES** Petitioner's objections, **ADOPTS** Judge Lewis's Report, **DENIES** the Petition in its entirety, and **DENIES** a certificate of appealability.

## BACKGROUND[2]

On October 24, 2011 a jury convicted Petitioner of first-degree murder of his wife, Karina Ditto, in violation of California Penal Code § 187(a). Lodg. 6 at 3915–16, Doc. No. 29-23. Petitioner was sentenced to 25 years to life. *Id.* at 3929.

Petitioner appealed his conviction to the California Court of Appeal which affirmed the decision in an unpublished opinion filed on June 12, 2014. Lodg. 1, Doc. No. 27-1. Petitioner raised the same arguments in a petition for review before the California Supreme Court. Lodg. 9, Doc. No. 29-26. The California Supreme Court summarily denied that petition on September 10, 2014. Lodg. 10, Doc. No. 29-27.

On April 2, 2015, Petitioner filed an original petition for writ of habeas corpus in the Supreme Court of California, raising six claims of ineffective assistance of counsel. Lodg. 3, Doc. No. 27-3. While that case was still pending, on December 7, 2015, Petitioner filed the instant Petition for Writ of Habeas Corpus in this Court pursuant to 28 U.S.C. § 2254 challenging his California state court conviction. Doc. No. 1 ("Pet."). In the Petition, Petitioner raises in Ground One a claim of denial of the right to present a defense under the Sixth Amendment (that was decided in the state court on direct appeal) and in Ground Two a claim of ineffective assistance of counsel containing six separate sub-claims that were raised in the then-pending California Supreme Court habeas petition. *Id.* at 5–38.

Petitioner asked this Court to stay and abey this federal action until the state court ruled on the unexhausted claims. Doc. No. 5. Respondent did not object. Doc. No. 6. Accordingly, Judge Lewis issued the stay. Doc. No. 7. The California Supreme Court

---

[2] The underlying facts set forth in the Report are adopted *in toto* and referenced as if fully set forth herein. This Court provides only a brief procedural background.

issued a general denial on the merits of the state petition on July 13, 2016.  Lodg. 4, Doc. No. 27-4.  On March 18, 2017, Petitioner sought leave in this Court to add five new claims that have not been exhausted in state court.  Doc. Nos. 22–24.  Judge Lewis denied leave to amend initially and once again on reconsideration.  Doc. Nos. 36, 40.[3]  Respondent filed an answer on April 14, 2017.  Doc. No. 32 ("Answer").  Petitioner filed a traverse on September 18, 2017.  Doc. No. 46 ("Traverse").

On December 8, 2017, Judge Lewis filed a Report recommending that the Court deny the Petition.  Doc. No. 47 ("Report").  Petitioner filed objections to the Report.  Doc. No. 49 ("Objs.").  Respondent did not file objections or reply to Petitioner's objections.

## LEGAL STANDARD

**I. Scope of Review of Report and Recommendation**

The district court's role in reviewing a magistrate judge's report and recommendation is set forth in 28 U.S.C. § 636(b)(1).  Under this statute, the district court "shall make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  When no objections are filed, the Court may assume the correctness of the magistrate judge's findings of fact and the district court is not required to conduct a de novo review of the magistrate judge's report and recommendation.  *See Wang v. Masaitis*, 416 F.3d 992, 1000 n.13 (9th Cir. 2005) (stating that "de novo review of a R & R is only required when an objection is made"); *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that 28 U.S.C. § 636(b)(1)(c) "makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise").

---

[3] Petitioner objects to Judge Lewis's orders denying him leave to amend.  Objs. at 2.  The Court overrules this objection for the reasons stated in those orders.

## II. Scope of Review of Federal Habeas Petition Pursuant to 28 U.S.C. § 2254

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7–8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The Court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id*. Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The Court may also grant relief if the state court's decision was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned state court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805–06

(1991).  If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law.  *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75–76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

## ANALYSIS

The Petition raises two grounds: (1) denial of the right to present a defense under the Sixth Amendment; and (2) ineffective assistance of counsel.  The Court will examine each in turn.

**I. Ground One**

Petitioner argues that the trial court denied him a right to present a defense under the Sixth Amendment when it refused to allow him to reopen his case and present evidence purportedly showing Karina's body temperature at the hospital.  At the close of the evidence phase of trial, defense counsel moved to admit into evidence four medical documents containing references to Karina's body temperature at the hospital. Lodg. 1 at 14.  The trial court ultimately denied the motion with respect to three documents, explaining that they were confusing and cumulative under California Evidence Code section 352.  *Id.* at 14–15.[4]  The trial court did allow Petitioner to argue the issue of Karina's alleged hypothermia on closing.  *Id.*  On direct appeal, Petitioner argued that the trial court's evidentiary ruling violated his federal rights to due process under the Fifth Amendment and to confront witnesses under the Sixth Amendment.  Lodg. 7 at 66–67,

---

[4] That provision provides in full, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  Cal. Evid. Code § 352.

Doc. No. 29-24. The California Court of Appeal for the Fourth Appellate District rejected this argument:

> The trial court carefully evaluated Ditto's request to admit the documents, and based its refusal to do so on the applicable law—in particular Evidence Code section 253—finding that the medical records were cumulative and confusing to the jury. We also note that in excluding the medical documents, the court likely considered the fact they were unauthenticated. Defense counsel conceded as much when he noted that he had not obtained a witness to authenticate the documents. We reject Ditto's claim the court's error was of constitutional dimension. The application of ordinary rules of evidence like Evidence Code section 352 does not implicate the federal Constitution.

Lodg. 1 at 15–16 (citation omitted).

Petitioner argues that the California Court of Appeal's rejection of his constitutional claim is contrary to clearly established law and an unreasonable application of law to the facts. Traverse at 3. He maintains that the standard of review should be de novo because the California Court of Appeal "did not address th[e] underlying federal constitutional issue." Pet. at 7–8. On the merits, Petitioner contends that the evidentiary ruling deprived him of a constitutional right to present a defense because these documents showed that Karina's body temperature was still warm even upon her arrival at the hospital, which would undercut the prosecution's theory that Karina was already cold by the time the first responders arrived at their home and that Petitioner lied about the cause of her injuries. *Id.* at 8. Respondent argues that the Court of Appeal's decision is entitled to AEDPA deference and that it was reasonable because the federal Constitution does not govern the application of ordinary rules of evidence. Answer at 13. Judge Lewis agreed with Respondent's position. Report at 10–11.

The Court finds that the appropriate standard of review for Ground One is deference under AEDPA. Contrary to Petitioner's assertion, the California Court of Appeal addressed Petitioner's constitutional argument. It expressly "reject[ed]" this argument, explaining that "[t]he application of ordinary rules of evidence like Evidence Code section 352 does not implicate the federal Constitution." Lodg. 1 at 16 (citation omitted).

Petitioner makes much of the fact that the state opinion cited state, rather than federal, caselaw in support of this proposition. Traverse at 3. But AEDPA does not require a state opinion to cite Supreme Court caselaw. *See Early*, 537 U.S. at 8 ("Avoiding these pitfalls does not require citation of our cases—indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." (emphasis in original)). Because the state court addressed Petitioner's constitutional claim "on the merits," its reasoning and decision is entitled to AEDPA deference. 28 U.S.C. § 2254(d).[5]

Applying AEDPA deference, the Court agrees with Judge Lewis that "the California Court of Appeal was right to reject Petitioner's claim that the trial court committed an error of constitutional dimension." Report at 11. The California Court of Appeal stated that "[t]he application of ordinary rules of evidence like Evidence Code section 352 does not implicate the federal Constitution." Lodg. 1 at 15–16 (citation omitted). Indeed, the Supreme Court has clearly established that "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (per curiam) (citation omitted); *see also Holmes v. South Carolina*, 547 U.S. 319, 320 (2006) (noting that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury."). "Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (citation omitted).

Petitioner's reliance on *Chambers* is misplaced. In that case, the defendant was not

---

[5] Even if "the state court denied all relief without specifically addressing the federal claim," this Court would "presume that the state court adjudicated the claim on the merits" and "must determine what arguments or theories . . . could have supported the state court's rejection of the federal claim, and then give deference to those arguments or theories under AEDPA." *Amado v. Gonzalez*, 758 F.3d 1119, 1131 (9th Cir. 2014) (cleaned up) (quoting *Harrington v. Richter*, 562 U.S. 86, 99 (2011)). Thus, even in that scenario, de novo review is not warranted.

permitted to cross-examine a witness named McDonald who had signed, then repudiated, a confession to the murder of a police officer with which defendant was charged. *Chambers v. Mississippi*, 410 U.S. 284, 291–92 (1973). The trial judge denied the defendant an opportunity to cross-examine McDonald because he called him as a witness and Mississippi common law did not allow a party to impeach his own witness. *Id.* at 295–96. In addition, the trial judge relied on state hearsay rules to prevent the defendant from calling three witnesses to whom McDonald had admitted that he shot the officer, even though the hearsay testimony was otherwise reliable. *Id.* at 292. The Supreme Court observed that "the rights to confront and cross-examine witnesses and call witnesses in one's behalf have long been recognized as essential to due process." *Id.* at 294. The trial court, it found, engaged in "technical[]" application of state rules to deny vital testimony in aid of defendant's defense. *Id.* at 298, 302. The Supreme Court held that "the exclusion of this critical evidence, coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process." *Id.* at 302.

The Supreme Court has since characterized *Chambers* as a "rare[]" instance in which the Court "held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." *Jackson*, 569 U.S. at 509. Indeed, *Chambers* limited its ruling to "the facts and circumstances of this case" and took pains to reaffirm "the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures." 410 U.S. at 302–03; *see also Perry v. Rushen*, 713 F.2d 1447, 1452 (9th Cir. 1983) (explaining that the holding in *Chambers* turned on "unusually compelling circumstances").

This case is far afield from *Chambers*. Here, the trial judge employed a "widely accepted rule of evidence law" to exclude documents that were cumulative, confusing, and unauthenticated. *Jackson*, 569 U.S. at 510; *compare* Cal. Evid. Code § 352, *with* Fed. R. Evid. 403 (federal version). Petitioner sought to introduce medical documents that he wished to interpret differently than what the emergency room doctors and nurses claimed

in their testimony. Lodg. 1 at 14–15. Defense counsel conceded that he had not obtained a witness to authenticate the documents. *Id.* at 16. Even so, the judge allowed in one of these documents and permitted defense counsel to argue the issue of Karina's purported hypothermia to the jury. *Id.* at 14–15. In sum, "[t]he trial court carefully evaluated Ditto's request to admit the documents" and made routine evidentiary rulings that, although adverse to Petitioner, still allowed him to present his defense. *Id.* at 15–16. There was nothing "arbitrary" or "disproportionate" about those rulings. *Scheffer*, 523 U.S. at 308 (citation omitted). The California Court of Appeal's decision was therefore reasonable.

## II. Ground Two

Petitioner next claims that he was denied his right to effective assistance of counsel. To establish ineffective assistance of counsel under federal law, Petitioner must prove: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 688, 694, 697 (1984). A reasonable probability of a different result "is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The Court may reject the claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial. *Id.* at 697; *see also Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002) ("Failure to satisfy either prong of the *Strickland* test obviates the need to consider the other.").

Review of counsel's performance is "highly deferential" and there is a "strong presumption" that counsel rendered adequate assistance and exercised reasonable professional judgment. *Williams v. Woodford*, 384 F.3d 567, 610 (9th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689). The Court must judge the reasonableness of counsel's conduct "on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. The Court may "neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight." *Matylinsky v. Budge*, 577 F.3d 1083, 1091 (9th Cir. 2009) (citation omitted). Petitioner bears the burden to "overcome the presumption that, under the circumstances, the challenged action might be considered

sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted).

The Supreme Court has explained how to analyze *Strickland* in the context of AEDPA:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted).

In this case, the Petition presents six sub-claims under Ground Two alleging that his trial counsel was ineffective because he failed to present certain evidence at trial, either by expert testimony or by cross-examination. Petitioner has since conceded one sub-claim, so only five remain. Traverse at 16–17; Report at 14–15.[6] Respondent maintains that the California Supreme Court's determination that Petitioner's counsel was not ineffective was neither contrary to nor an objectively unreasonable application of clearly established federal law or an unreasonable determination of the facts. Judge Lewis agreed with Respondent's position on all sub-claims. The Court will examine each of the five sub-claims in turn.

**A. Failure to Present Additional Evidence Regarding Karina's Initial Condition**

Petitioner avers that trial counsel was constitutionally ineffective for failing to present medical records accurately showing the conditions of Karina's heart, body temperature, and pupils. Pet. at 11–21. With respect to Karina's heart, Petitioner contends

---

[6] Petitioner objects that because the Report's statement of facts copied the statement of facts from the California Court of Appeal, it did not consider additional facts that are relevant to his ineffective assistance of counsel claim in this Court. This objection is meritless. The Report considered the entire state court record and squarely addressed the facts and arguments of Petitioner's ineffective assistance of counsel claim.

that the evidence showed that it was not asystolic (flatline) when the paramedics arrived. He argues that trial counsel should have cross-examined the paramedics on their contrary testimony and also confronted them with a printout of the cardiac monitor which purportedly showed that she initially had a heart rhythm. Respondent counters that the evidence did not contradict the paramedics' testimony at trial that Karina had no pulse and was asystole upon first examination. Petitioner replies that the asystole alarm went off on the cardiac monitor because of a poor pads connection and asserts that it subsequently showed Karina had a heartbeat of 132 bpm. Judge Lewis ruled against Petitioner. He observed that "the totality of the evidence shows that Karina did not have a pulse for at least eight minutes until after her heart was repeatedly pumped and was electrically charged with medication." Report at 13. Judge Lewis also noted that "[i]t is not unreasonable to assume that the heartbeat reading of 132 was due to the fact that her heart was being manually pumped by paramedics." *Id.* Petitioner objects that there is no support for the "conjecture" that CPR caused the 132bpm heartbeat. Objs. at 6.

With respect to Karina's body temperature, Petitioner contends that trial counsel was ineffective for failing to contend that Karina's body temperature was normal at her home and dropped only after hospital staff implemented hypothermia protocol. Petitioner argues that the paramedics' notes and hospital records support this argument. Respondent counters that Petitioner's interpretation of the medical records is contorted and that both paramedics and medical staff provided percipient testimony that Karina's body was cooler than expected upon first examination. Judge Lewis found that "[e]ven giving Petitioner the benefit of the doubt" that Karina's hypothermia was the result of the hospital's hypothermia protocol, "Karina still could have had a colder than normal skin temperature." Report at 14. Petitioner once again objects that Judge Lewis's conclusion rests on "conjecture." Objs. at 7.

With respect to Karina's pupils, Petitioner argues that trial counsel should have contested the prosecution's narrative that Karina's pupils were fixed, dilated, and unresponsive when first assessed by paramedics. He asserts that the paramedics' reports

show that her pupils changed to this condition only after she received medications.[7] Respondent counters that these records are inconsistent and confusing because "[t]here is no information about who prepared these reports or when." Answer at 22. Judge Lewis found that "a reasonable explanation . . . is that the condition of Karina's eyes could have changed following receiving CPR from paramedics." Report at 14. Petitioner claims once again that Judge Lewis engaged in "conjecture" and maintains that the evidence shows that Karina's "initial vital signs were consistent with Mr. Ditto's version of events." Objs. at 8.

The Court agrees with Judge Lewis's conclusion that on each of these issues, the state court's denial of ineffective assistance of counsel was not objectively unreasonable. It is well established that in a criminal trial, defense counsel has "wide latitude . . . in making tactical decisions" about how to present evidence and attack the prosecution's evidence. *Harrington*, 562 U.S. at 106 (citation omitted). The discretion to make tactical decisions is especially important where, as here, counsel faced "overwhelming evidence" in the record against Petitioner. Lodg. 1 at 17. There was a mountain of evidence in the record showing that Karina's injuries were the result of strangulation rather than an accidental fall down the stairs. *See* Report at 2–7 (highlighting this evidence). Several paramedics testified that Karina's heart did not have a pulse when they first encountered her, and their testimony was consistent with the cardiac monitor's contemporaneous audio recording of their efforts to save her life. *See* Answer at 21 (stringcite of testimony); Lodg. 5 at 466–79, Doc. No. 29-2 (transcript of cardiac monitor's recording); Lodg. 6 at 575 (recording played in open court). Petitioner now attempts to relitigate certain facts about Karina's initial condition as if the prosecution's entire case turned on these details. It did not. As Judge Lewis noted, "Petitioner's guilt did not depend upon the exact medical

---

[7] The report states this with respect to Karina's pupils: "I-closed fixed dilated." Ex. F to Pet. at 99. The report does not state when this observation was made, but the context of the surrounding paragraph suggests that this observation was made upon first encounter with Karina.

condition" of Karina upon first encounter by the paramedics; instead "[h]is guilt was proved by the physical evidence of strangulation, the bruised and battered condition of her body, and Petitioner's testimony and demeanor on the stand." Report at 14. If trial counsel had dwelled on the details of Karina's initial condition to the extent that Petitioner now insists, that decision could have "carried its own serious risks," such as detracting from Petitioner's credibility or efforts to build up other areas of the defense. *Harrington*, 562 U.S. at 108. Thus, the state court's rejection of Petitioner's claim was not objectively unreasonable.

**B. Failure to Present Evidence Regarding Karina's Spine Injury**

Next, Petitioner argues that trial counsel was constitutionally ineffective for failing to argue that Karina suffered a cervical spine injury. At trial, Dr. Mena, a pathologist, testified that he found no injury to Karina's cervical spine in his autopsy. Petitioner contends that trial counsel should have argued that Dr. Mena *did* find such injury in his initial analysis of Karina's body, and that this provided "the crucial link between Karina's fall down the stairs and her death." Pet. at 29–30. Judge Lewis rejected Petitioner's argument. He found that "[i]t was not unreasonable for the state court to conclude that defense counsel was not ineffective for failing to impeach Dr. Mena with an arguably twisted interpretation of Dr. Mena's own initial thoughts when he first examined Karina." Report at 15. Petitioner objects with largely the same arguments raised before.

The Court agrees with Judge Lewis. Tellingly, Petitioner does not dispute that a CT scan showed that Karina had no spinal injury, and that the emergency room trauma surgeon concluded that she did not have a cervical spine injury that led to cardiac arrest. Answer at 23. Petitioner's complaint is thus limited to trial counsel's failure to extract a few phrases in Dr. Mena's initial autopsy analysis to potentially impeach him. But as the Report explains, Dr. Mena's initial autopsy observations did not contradict his final autopsy opinion nor his testimony. Perhaps some trial counsel would have probed the issue further; others may have reasonably viewed it as futile considering Dr. Mena's clear testimony on the issue. It would be entirely reasonable for the state court to conclude that trial counsel's

actions here were reasonable.

## C. Failure to Present Evidence Regarding Karina's Blood Disorder

Petitioner contends that trial counsel was constitutionally ineffective for failing to present evidence that Karina had a blood disorder called Disseminated Intravascular Coagulopathy ("DIC"). The defense forensic pathologist testified that Karina's anemia, low platelet count, and slow clotting contributed to her extensive bleeding and bruising, but he did not testify that Karina had DIC, a blood disorder that causes those conditions. Pet. at 32. Petitioner has now identified an expert who claims that the evidence at trial showed that Karina had DIC. *Id.* at 33–34. Petitioner avers that establishing Karina's DIC would provide the "missing link between Karina's fall and her widespread bleeding and bruising" and undermine the prosecution's theory that she had been assaulted. *Id.* at 35. Respondent counters that even if Karina had DIC, which is caused by lack of oxygen (hypoxia), the evidence at trial showed that Karina's hypoxia was caused by strangulation and not a fall down the stairs. Judge Lewis agreed with Respondent and noted that "there is ample evidence in the trial record that the cause of Karina's brain hypoxia was strangulation." Report at 16. Petitioner objects that evidence of DIC "would have given the jury an alternate explanation" as to the cause of Karina's injuries. Objs. at 9.

The Court agrees with Judge Lewis that the state court's rejection of this claim was not objectively unreasonable. Petitioner disagrees with the expert testimony his forensic pathologist provided at trial and wishes, in hindsight, that trial counsel focused more on establishing Karina's alleged DIC through a different expert. But as Judge Lewis points out, Karina's purported susceptibility to bleed and bruise more when she lacked oxygen does not explain *how* she came to lack oxygen in the first place. On *that* critical question, the jury evidently did not believe the defense theory of an accidental fall: "the pathologist and the treating physician both testified that the external blunt force injuries to Karina's head were not severe enough to cause brain damage which led to her hypoxia." Report at 16; *see also Harrington*, 562 U.S. at 108–09 (rejecting the petitioner's ineffective assistance of counsel claim under AEDPA concerning counsel's failure to consult a blood

expert where "there was the possibility that expert testimony could shift attention to esoteric matters of forensic science, distract the jury . . . , or transform the case into a battle of the experts"). The Court therefore adopts Judge Lewis's conclusion with respect to this claim.

**D.  Failure to Present Evidence Regarding the Cause of Karina's Leg Bruise**

Petitioner contends that trial counsel was constitutionally ineffective for failing to supply evidence challenging the prosecution's theory that the patterned bruise on Karina's leg was the result of Petitioner kicking her with his shoe. The prosecution's witness, Steve Cordes, testified that the patterned bruise on her leg looked like a footwear impression. Pet. at 36. Respondent argues that it was sufficient that trial counsel engaged this expert in "vigorous cross-examination" and elicited concessions that "the bruise on Karina's leg could have been caused by anything." Answer at 25. Judge Lewis agreed with Respondent that "defense counsel represented [Petitioner] with vigor and conducted a skillful cross-examination." Report at 16. *See Harrington*, 562 U.S. at 111 ("In many instances cross-examination will be sufficient to expose defects in an expert's presentation."). Petitioner did not object to Judge Lewis's decision with respect to this claim. Accordingly, the Court finds that the state court's determination was not objectively unreasonable. *See Wang*, 416 F.3d at 1000 n.13; *Reyna–Tapia*, 328 F.3d at 1121.

**E.  Failure to Present a Blood Spatter Expert**

Finally, Petitioner contends that trial counsel was constitutionally ineffective for failing to present a blood pattern expert to refute the prosecution's blood pattern expert. At trial, the prosecution's expert provided an opinion that Karina's blood patterns were consistent with a violent assault. Respondent argues that it was sufficient that "[d]efense counsel vigorously cross-examined the expert . . . eliciting from him acknowledgements that Petitioner could have caused Karina's movement while trying to revive her." Answer at 26; *see also* Pet. at 37 (admitting that this issue was "peripheral to the prosecution's focus on the case"). Judge Lewis relied on the Supreme Court's principle that "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every

prosecution expert an equal and opposite expert from the defense." Report at 17 (quoting *Harrington*, 562 U.S. at 111). Thus, "it was not necessary for [defense counsel] to bring in his own blood spatter expert." Report at 17. Petitioner did not object to Judge Lewis's decision with respect to this claim. Accordingly, the Court finds that the state court's determination was not objectively unreasonable. *See Wang*, 416 F.3d at 1000 n.13; *Reyna–Tapia*, 328 F.3d at 1121.

## III. Certificate of Appealability

Pursuant to Rule 11 of the Rules following 28 U.S.C. § 2254, which was amended effective December 1, 2019, a district court now "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A state prisoner may not appeal the denial of a section 2254 habeas petition unless he obtains a certificate of appealability from a district or circuit judge. 28 U.S.C. § 2253(c)(1)(A); *see also United States v. Asrar*, 116 F.3d 1268, 1269–70 (9th Cir. 1997) (holding that district courts retain authority to issue certificates of appealability under AEDPA). A certificate of appealability is authorized "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this threshold showing, petitioner must show: (1) the issues are debatable among jurists of reason, (2) a court could resolve the issues in a different manner, or (3) the questions are adequate to deserve encouragement to proceed further. *Lambright v. Stewart*, 220 F.3d 1022, 1024–25 (9th Cir. 2000) (citing *Slack v. McDaniel*, 529 U.S. 473 (2000)).

The Court finds that no issues are debatable among jurists of reason. This Court further finds that no issues could be resolved in a different manner. Lastly, this Court finds that no questions are adequate to deserve encouragement to proceed further. Accordingly, this Court **DENIES** Petitioner a certificate of appealability.

## CONCLUSION AND ORDER

Based on the foregoing, **IT IS HEREBY ORDERED**:

1. Petitioner's objections to the Magistrate Judge's report and recommendation are **OVERRULED.**

2. The Magistrate Judge's report and recommendation is **ADOPTED.**

3. The Petition is **DENIED** in its entirety.

4. Petitioner is **DENIED** a certificate of appealability.

**IT IS SO ORDERED.**

DATED: July 5, 2023

_____
JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE